UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIZIREK NAMAZBEKOVA (A# 226-170-647),<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | No. 1:26-cv-04636 TLN SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee proceeding through counsel with a habeas corpus action pursuant to 28 U.S.C. § 2241. The assigned District Judge referred the matter to the undersigned Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. ECF No. 4. Because Petitioner's § 1225(b)(1) detention is still within the brief, constitutionally permissible period contemplated by the Supreme Court in Demore v. Kim, 538 U.S. 510 (2003), the undersigned recommends the petition be denied without prejudice.

**I. Factual and Procedural History**

On April 14, 2026, Border Patrol agents encountered Petitioner, a citizen and national of Kyrgyzstan, near the Tecate Port of Entry in California. ECF No. 6-1 at 2. Petitioner was arrested and issued an expedited order of removal under 8 U.S.C. § 1225(b)(1). Id.; ECF No. 6-2 (Notice and Order of Expedited Removal, Apr. 14, 2026). Immigration officials vacated the expedited removal order after an asylum officer determined Petitioner demonstrated credible fear

of persecution or torture. ECF No. 1-1 (Notice to Appear, May 8, 2026). Petitioner was scheduled for a custody redetermination hearing on June 5, 2026, but immigration officials cancelled it after Petitioner's transfer to the California City Immigration Processing Center. ECF No. 1 at 2, ¶ 2; ECF No. 1-2 (notice of custody redetermination hearing). She remains detained in that facility within this judicial district. ECF No. 1 at 5, ¶ 21.

Petitioner, through counsel, filed the instant § 2241 petition on June 15, 2026. ECF No. 1. Petitioner alleges that her continued detention without meaningful custody redetermination violates the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1231(a)(6). Id. at 7-11. By way of relief, she seeks a declaration that her detention violates the Due Process Clause and § 1231(a)(6), and her immediate release from detention. Id. at 11.

Respondents oppose the petition on grounds Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1)(b)(ii). ECF No. 6 at 2-3. "Despite having been scheduled for a bond hearing, Petitioner is not owed a bond hearing by virtue of being detained under 8 U.S.C. § 1225(b)(1)(B)(ii))." Id. at 3. Respondents further argue that Petitioner's roughly three-month detention is not unconstitutionally prolonged. Id. Petitioner filed a brief reply arguing that the short duration of her § 1225(b)(1) notwithstanding, "the totality of the circumstances, including the cancellation of the scheduled bond hearing, the lack of any rescheduled hearing, the uncertainty of the removal proceedings, the absence of individualized findings, and the serious liberty interests at stake," warrant relief. ECF No. 7.

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72

(W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately alleged a right under "substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment."). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the

litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

**B. Statutory Immigration Framework**

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). But if such non-citizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

**III. Analysis**

Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii) by virtue of the revised Notice to Appear issued on May 8, 2026, reflecting the positive credible fear determination and termination of expedited removal proceedings. See ECF No. 1-1. The cancelled custody redetermination hearing notwithstanding, and without addressing whether the IJ would have exercised jurisdiction had the hearing gone forward, the undersigned finds that Petitioner is not entitled to a bond hearing as a form of statutory relief under § 1225(b)(1).[1]

The undersigned turns next to Petitioner's constitutional arguments. "[M]andatory detention statutes like § 1225(b)(1) are subject to constitutional limitations on an as-applied basis." Tigranyan v. Warden of California City Det., No. 1:25-CV-01554-DJC-SCR, 2026 WL 91765, at *4 (E.D. Cal. Jan. 13, 2026) (citing Nielsen v. Preap, 586 U.S. 392, 420 (2019), and Demore, 538 U.S. at 532-33 (Kennedy, J., concurring)), report and recommendation adopted, No.

[1] The petition's request for relief under 8 U.S.C. § 1231(a)(6) is inapposite. That provision governs detention beyond the 90-day removal period, and Petitioner here does not have a removal order let alone an administratively final one that triggers the start of that period. See 8 U.S.C. § 1231(a)(1)(A)-(B).

1:25-CV-01554-DJC-SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026). Petitioner frames her due process claim as a "challenge [to] the constitutionality of her prolonged detention," ECF No. 1 at 8-9, ¶ 34, which the undersigned construes as sounding in procedural due process.

Although Petitioner has a liberty interest in "'freedom from prolonged detention' [that] is 'unquestionably substantial,'" Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011)), she has been detained by ICE for just over three months. In Demore, the Supreme Court held the petitioner's six-month detention under another mandatory detention statute, § 1226(c), was "constitutionally permissible" despite being "somewhat longer than average." 538 U.S. at 530-531. Further, although the Ninth Circuit has not addressed when mandatory detention under § 1225(b)(1) becomes prolonged, it has referred to detentions longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them." Rodriguez Diaz, 53 F.4th at 1207 (citations omitted); see also Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent"). Therefore, given that the duration of Petitioner's detention is still within the range contemplated in Demore, the undersigned finds that it does not yet implicate her protected interest against prolonged detention.

Nevertheless, Petitioner retains a general liberty interest in freedom from detention—even under a mandatory detention statute like § 1225(b)(1). "'[F]reedom from imprisonment . . . lies at the heart of the liberty [the Due Process Clause] protects.'" Zadvydas, 533 U.S. at 690 (citation omitted). Turning to the Mathews factors, the relatively short duration of Petitioner's § 1225(b)(1) detention—roughly three months—significantly diminishes the strength of this private interest. "[T]he longer mandatory detention continues . . . beyond the 'brief' period authorized in Demore, the harder it becomes to justify without conducting an individualized bond hearing." Sarr v. Scott, 765 F. Supp. 3d 1091, 1098 (W.D. Wash. 2025); cf. Black v. Decker, 103 F.4th 133, 151 (2d Cir. 2024) (finding first Mathews factor "weighs heavily in favor" of petitioners where they were detained for "far longer" than the petitioner in Demore). Therefore, at this stage

of Petitioner's detention, the first factor favors Respondents.

Next, the risk of erroneous deprivation is currently low where the duration of Petitioner's detention does not exceed that of the petitioner in Demore. However, the risk of erroneous deprivation will increase over time as her detention becomes prolonged due to the "almost nonexistent procedural protections in place" for § 1225(b)(1) detainees." Black, 103 F.4th at 152 (finding same in context of mandatory detention under § 1226(c)).

Finally, precedent dictates that detention serves the government interests of "protecting the public from dangerous criminal aliens," and preventing flight by "increas[ing] the chance that, if ordered removed, the [noncitizens] will be successfully removed." Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 515, 528). Indeed, in Demore, the Supreme Court expressly upheld the brief, mandatory detention of noncitizens without an individualized determination of dangerousness or flight risk. See Demore, 510 U.S. at 528. While this factor currently favors the government, it too will tilt toward Petitioner as her detention without an individualized determination of danger or flight risk becomes prolonged. See Black, 103 F.4th at 153–54 ("The additional procedural safeguards we would allow here under Mathews do nothing to undercut those interests. At any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees."); Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) ("Providing a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community.") (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)).

On balance, the Mathews factors weigh against ordering a bond hearing at the current, roughly three-month juncture of Petitioner's immigration detention. Accordingly, the undersigned recommends that the petition be denied without prejudice. These findings and recommendations do not preclude Petitioner from seeking a bond hearing through a subsequent § 2241 petition at a later point in time should his detention become prolonged.

////

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that Petitioner Aizirek Namazbekova's (A# 226-029-325) application for a writ of habeas corpus (ECF No. 1) be DENIED without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 23, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE